UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X

THOMAS GESUALDI and FRANK FINKEL
Trustees of Local 282 International
Brotherhood of Teamsters Welfare,
Pension, Annuity, Job Training and
Vacation Sick Leave Trust Funds,                REPORT AND
                                                RECOMMENDATION
                        Plaintiffs,
                                                CV 2010-1249 (ARR)(MDG)
        - against -

TORRETTA TRUCKING INC. and GIUSEPPE
SCALICI,
                        Defendants.

- - - - - - - - - - - - - - - - - - X


GO, United States Magistrate Judge:

    Plaintiffs, the trustees of the Local 282 Welfare, Pension,

Annuity, Job Training and Vacation/Sick Leave Trust Funds (the

"Funds"), brought this action against defendants Torretta Trucking

Inc. ("Torretta") to recover delinquent benefit contributions,

interest, liquidated damages and attorneys' fees.  The Honorable

Allyne R. Ross referred plaintiffs' motion for entry of default

judgment to me to report and recommend.  See ct. doc. 6.


                        BACKGROUND

    The facts pertinent to this decision are undisputed and are set

forth in plaintiff's complaint ("Compl.") (ct. doc. 1) and the

Affirmation of Avram H. Schreiber dated June 28, 2010 ("Schreiber

Aff.") (ct. doc. 4).

    The Funds are multi-employer employee benefit plans established

for the purpose of providing welfare, pension, annuity, job training,

vacation and sick leave benefits to  members of Local 282 of the
International Brotherhood of Teamsters ("Local 282").  <u>See</u> Compl. at
¶¶ 2, 4.  The plaintiff trustees administer the Funds pursuant to a
Restated Agreement and Declaration of Trust (the "Trust Agreement")
which requires contributions to be made to the Funds in accordance
with a collective bargaining agreement to which the employers are
parties.  Schreiber Aff., Exh. C (Trust Agreement) at art. IX, § 1.
Defendant entered into a collective bargaining agreement (the "CBA")
with Local 282 covering the period of July 1, 2006 through June 30,
2009 which incorporates by reference the Trust Agreement.  Schreiber
Aff. at ¶¶ 9, 12, Exh B. (CBA) at § 12(G).  The CBA remains in effect
unless terminated upon written notification sent at least 60 days
prior to the expiration of the current agreement by the employer to
the union that the employer will not sign a new agreement.  <u>See</u> Trust
Agreement at art. IX, § 1(a).  Because plaintiffs never received such
written notice from Torretta, the CBA has remained in effect beyond
June 30, 2009.  Schreiber Aff. at ¶ 15.  <u>See</u> <u>Long Island Head Start</u>
<u>Child Dev. Servs. v. N.L.R.B.</u>, 460 F.3d 254, 256 (2d Cir. 2006) (CBA
signed in 1999 extended through 2004 by way of automatic renewal
clause).

Under the CBA, defendant is required to pay benefit
contributions to the Funds based on the number of hours worked by its
employees.  Defendant is also required to submit remittance reports
to the Funds together with each monthly payment.  <u>See</u> Trust Agreement
at art. IX, § 1(c).

Contributions are due 60 days after the end of the month for which the contributions are earned.  See CBA at § 12(F).  The Funds are entitled to interest on any delinquent contributions "at the rate of 1½ percent per month."  See Schreiber Aff., Exh. D (interest rate amendment).  The Trust Agreement also provides for attorneys' fees and liquidated damages equal to the greater of:  additional interest on the unpaid contributions or twenty percent of the unpaid contributions.  See Trust Agreement at art. IX, § 3.

Plaintiffs commenced this action on March 18, 2010 and the Clerk of the Court noted entry of default on June 28, 2010.  In their default submissions, plaintiffs seek to recover damages for unpaid and late-paid contributions for certain weeks from October 2008 through January 2009.  See Schreiber Aff. at ¶¶ 16-18.  As set forth in Mr. Schreiber's affidavit, defendants sent plaintiffs several checks for contributions which were dishonored by the bank for insufficient funds.  Id. at ¶¶20-26.  Each returned check was signed by defendant Guisseppe Scalici. See id. at Exhs. F-L (copies of returned checks).  The outstanding principal owed for two of the contributions due were paid by available credit and a partial payment made by available credit.  Id. at ¶¶ 20, 22, 25.  Plaintiffs also seek contributions owed for the weeks ending March 27, 2009 through August 28, 2009 for which no remittance reports were submitted by defendants.  Id. at ¶¶ 18.

## DISCUSSION

I.   Legal Standards Governing Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. Greyhound, 973 F.2d at 159. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." Id.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. Action S.A. v. Marc Rich and Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. Conticommodity Serv, Inc., 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); Au Bon Pain, 653 F.2d at 65; Directv, Inc. v. Hamilton, 215 F.R.D. 460, 462 (S.D.N.Y. 2003).

II.  Liability of Defendants

The Funds are multi-employer employee benefit plans under the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., while Torretta is an employer under the terms of that statute. See 29 U.S.C. §§ 1002(3), (5) and (37), 1132(d)(1), 1145. The plaintiff trustees, as "fiduciaries" of the Funds, may bring a civil action to enforce the provisions of a plan. See 29 U.S.C. §§ 1002(21)(A), 1132(a)(3).

ERISA requires an employer to "maintain records with respect to each of his employees sufficient to determine the benefits due" and to make records "available for examination." 29 U.S.C. §§ 1027, 1059(a). In addition, section 515 of ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of a plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Torretta was required by the CBA to comply with requirements in the Trust Agreement, to submit remittance reports and to pay fringe benefit contributions to the Funds on a timely basis.

It is undisputed that Torretta made payments with checks that were returned for insufficient funds for the weeks ending October 5, 2008, October 12, 2008, November 9, 2008, December 14, 2008, December 28, 2008, January 4, 2009 and January 11, 2009. By applying available credit, plaintiffs collected the payments owed for the weeks ending October 4, 1008 and November 8, 2008 on January 9, 2010, as well as a partial payment for the contributions owed for week ending January 4, 2008. See Schreiber Aff. at ¶¶ 20, 22, 25.

However, the contributions due for the remaining periods covered by the returned checks and the remainder of the amounts owed for the week ending January 9, 2008 remain unpaid. <u>Id.</u> at ¶¶ 21, 23-26. In addition, Torretta failed to submit remittance reports or make payments for the weeks ending March 27, 2009 through August 28, 2009. <u>Id</u>. at ¶ 18. Defendant Torretta clearly is liable for the contributions not paid.

Although plaintiffs have no right under ERISA to seek damages for those delinquent contributions that were paid through applied credit prior to the suit being filed on March 18, 2010, <u>see</u> <u>Iron Workers Dist. Council of Western N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.</u>, 68 F.3d 1502, 1507 (2d Cir. 1995) ("no [section 1132(g)(2)] suit can be commenced in the absence of unpaid contributions"), a contractual basis exists for recovering interest and attorneys' fees for those untimely contributions under the Trust Agreement. <u>Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.</u>, 258 F.3d 645, 654 (7th Cir. 2001) (Fund could enforce a plan's provisions imposing interest and liquidated damages on late contributions paid before the suit was brought even where § 1132(g)(2) did not apply); <u>Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.</u>, 933 F.2d 376, 390 (6th Cir. 1991) ("a fund has a valid claim for late payment and/or audit damages pursuant to its collective bargaining agreements with defendants"); <u>LaBarbera v. T&M Specialties Ltd.</u>, No. CV-06-5022, 2007 WL 2874819, at *2 (E.D.N.Y. Sept. 27, 2007); <u>Finkel</u>

v. East End Elec. Assocs., Ltd., No. 06-CV-2129, 2007 WL 2572169, at
*7-*8 (E.D.N.Y. July 10, 2007); Bd. of Trs. of Local 41, Intern.
Broth. of Elec. Workers Health Fund v. Zacher, 771 F. Supp. 1323,
1336 (W.D.N.Y. 1991).  The Trust Agreement provides that "an Employer
in default for five working days shall be obligated to pay interest
. . . together with attorney's fees, auditor's fees and liquidated
damages."  Trust Agreement at art. IX, § 3.  Thus, defendant is
liable to the Funds under ERISA and for breach of the Trust Agreement
for interest and liquidated damages with respect to the late
contributions that were ultimately paid through applied credit.

Plaintiffs also assert claims against defendant Scalici
individually because he signed the checks drawan from the account of
Torretta Trucking, Inc. which were returned unpaid by the bank.
Under section 3-403 of the New York U.C.C., "[a]n authorized
representative who signs his name to an instrument . . . except as
otherwise established between the immediate parties, is personally
obligated if the instrument names the person represented but does not
show that the representative signed in a representative capacity."
N.Y. U.C.C. § 3-403(2)(b).  A person signing a check for funds drawn
from a corporate account is personally liable "unless he specifically
indicates that he is signing in a representative capacity."  Finkel
v. Romanowicz, 577 F.3d 79, 88-89 (2d Cir. 2009).  Because defendant
Scalici has, by his failure to appear, not come forward with proof
that he signed the checks in a representative capacity, I recommend
holding him personally liable for the dishonored checks.  Id.

III. <u>Determination of Damages</u>

Section 502(g)(2)(B) of ERISA provides that a fiduciary seeking to enforce provisions of an employee benefit plan is entitled to recover:

> (A) the unpaid contributions; (B) interest on the unpaid contributions; (C) an amount equal to the greater of -- (I) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan not in excess of 20 percent ... of the [unpaid contributions]; (D) reasonable attorney's fees and costs of the action

29 U.S.C. § 1132(g)(2).

A. <u>Unpaid Contributions</u>

1. <u>Torretta</u>

The Funds are entitled to recover unpaid contributions for the weeks between October 2008 and January 2009 for which Torretta made payments with checks that were returned for insufficient funds and remain unpaid. In support of the amount of unpaid contributions owed for the weeks ending October 12, 2008; December 14, 2008; December 28, 2008; January 4, 2009 and January 11, 2009, plaintiffs have submitted the applicable remittance reports, copies of the checks that were returned and the bank statement reflecting that the checks were returned for insufficient funds. Schreiber Aff. at Exhs. F-L, T. Where available credits satisfied only part of the principal for the week ending January 4, 2008, plaintiffs have also submitted a statement reflecting the credits being applied as of a certain date and a letter from the Funds to Torretta reflecting the amount due after the credit was applied. <u>Id.</u> at Exhs. K, T. Thus, since the

Funds are entitled to unpaid contributions for those weeks, I recommend that the Court award plaintiffs $3,405.68, the total amount of unpaid contributions for those weeks, as reflected in Exhibit T to Mr. Schreiber's affidavit.

For the weeks ending March 27, 2009 through August 28, 2009, Torretta failed to make payments or submit remittance reports. Under the Trust Agreement, if an employer fails to submit required remittance reports, the Funds may estimate unreported hours by adding 10 percent to the number of hours for the period in which the largest number of hours were reported in the previous twelve reports submitted by the employer. Schreiber Aff. at ¶¶ 27-28; Trust Agreement at art. IX § 1(e). The amounts calculated by the above formulas are binding on the employer and are deemed the amount due for the purpose of any legal proceedings. Id.

To calculate damages, plaintiffs have provided a copy of the remittance report submitted by Torretta for September 28, 2008, the week with the largest number of hours reported by defendant during the twelve months prior to August 28, 2009. See Schreiber Aff., Exh. M (September 28, 2008 remittance report). Using the formula under the Trust Agreement, the contributions due for the weeks ending March 27, 2009 through August 28, 2009 should thus be based on 359.70 hours for the Welfare, Pension and Job Training Funds, 415.80 hours for the Annuity Fund and 374 hours for the Vacation/Sick Fund.

Under the CBA, Torretta was required to pay contributions from July 1, 2008 through June 30, 2009 at a rate of: $9.60 per hour to

the Welfare Fund; $7.00 per hour to the Pension Fund; $9.5025 per hour to the Annuity Fund; $0.10 per hour to the Job Training Fund; and $3.00 per hour to the Vacation/Sick Fund. See Schreiber Aff., Exh. N (Industry Rate Sheet). Thus, I respectfully recommend that plaintiffs be awarded $11,080.13 per week in damages for the principal amount of unpaid benefit contributions for the thirteen weeks ending March 27, 2009 through June 26, 2009, for a total of $144,041.69 for that period. See La Barbera v. State-Line Excavators Corp., No. 04-CV-3824, 2007 WL 952068, at *3 (E.D.N.Y. Mar. 29, 2007) (awarding unpaid contributions based on formula in trust agreement where employer failed to provide remittance reports and submit to an audit); La Barbera v. Italco Contracting, Inc., No. 04-CV-2189, 2006 WL 721318, at *2 (E.D.N.Y. Mar. 16, 2006) (awarding unpaid contributions based on formula in trust agreement where employer failed to submit to an audit); Roca v. Guardian Transp. Co., Inc., No. 99 CIV. 4996, 2002 WL 31082959, at *6 (S.D.N.Y. Sept. 16, 2002).

As of July 1, 2009, the contribution rates for the Welfare, Pension and Annuity Funds increased to $10.39 per hour, $8.50 per hour and $10.0925 per hour, respectively. See Schreiber Aff., Exh. O. Thus, for unpaid contributions for the nine weeks from July 3, 2009 through August 28, 2009, I respectfully recommend awarding $12,149.16 per week, for a total of $109,342.44.

In total, plaintiffs are entitled to $256,789.81 for unpaid contributions from Torretta.

### 2. <u>Scalici</u>

As discussed above, defendant Scalici is personally liable for the outstanding principal on the dishonored checks for the weeks ending October 12, 2008, December 14, 2008, December 28, 2008, January 4, 2009 and January 11, 2009. Thus, I recommend awarding plaintiffs damages against defendant Scalici of $3,405.68.

Even though Scalici is liable for the unpaid principal of the dishonored checks, plaintiffs have not provided any basis to recover interest or liquidated damages against defendant Scalici under New York law. <u>See Gesualdi v. Cambria Rubbish & Container Servs., Inc.</u>, No. 09-CV-5453, 2010 WL 5490938, at *4 (E.D.N.Y. Nov. 19, 2010). To the extent plaintiffs rely on ERISA based on a claim that Scalici is a fiduciary, see Schreiber Aff. at ¶ 45, there are no allegations in the complaint that would support such a finding. <u>See Romanowicz</u>, 577 F.3d at 86. Thus, I recommend denying plaintiff's request for interest and liquidated damages against Scalici.

### B. <u>Interest on Unpaid Contributions</u>

The amount of interest due for unpaid contributions must be "determined by using the rate provided under the plan." 29 U.S.C. § 1132(g)(2)(B). Pursuant to an amendment to the Trust Agreement, the Funds are entitled to interest on delinquent benefit contributions "at the rate of 1½% per month of each monthly amount due for each month on the monies due to the Trustees from the first day of the month when the payment is due to the date when payment is made." Interest Rate Amendment.

The plaintiffs have submitted a chart calculating interest for all unpaid and late paid contributions.  Schreiber Aff., Exh. T. However, in its submissions, plaintiffs use the wrong due date from which to calculate interest.  Under the CBA, if an employer does not post a surety bond, contributions are due weekly.  <u>See</u> CBA at § 13(A).  According to plaintiffs, Torretta did not post a surety bond as required.  Schreiber Aff. at ¶ 11.  Under the Trust Agreement, interest accrues "from the first day of the month when the payment was due to the date when payment was made."  Trust Agreement at art. 9, § 3.  However, plaintiffs calculated interest from the week following the week contributions were earned.  <u>See</u> Schreiber Aff. at ¶ 20.  In calculating interest, I have followed the provisions of the agreements even though it results in a greater award of interest to plaintiff.  For example, contributions for the week ending October 5, 2008 were due on October 12, 2008 but interest accrues from October 1, 2008.

Accordingly, I recommend awarding interest of $109,959.43 for the following unpaid contributions through October 15, 2011 and at a rate of $126.64 per day thereafter through the entry of judgment:

| Pay Period | Unpaid Contributions | Per Diem | Accrual Date | Days | Interest |
|---|---|---|---|---|---|
| Oct. 12, 2008 | $ 1,138.21 | $0.56 | 10/1/08 | 1109 | $    621.04 |
| Dec. 14, 2008 | $    271.63 | $0.13 | 12/1/08 | 1048 | $    136.24 |
| Dec. 28, 2008 | $    271.06 | $0.13 | 12/1/08 | 1048 | $    136.24 |

| | | | | | |
|---|---|---|---|---|---|
| Jan. 4, 2009 | $ 518.67[1] | $0.26 | 1/1/09 | 1017 | $ 264.42 |
| Jan. 11, 2009 | $ 1,206.11 | $0.59 | 1/1/09 | 1017 | $ 264.42 |
| March 27, 2009 | $11,080.13 | $5.46 | 3/1/09 | 958 | $ 5,230.68 |
| April 2009 | $ 44,320.52 | $21.86 | 4/1/09 | 927 | $20,264.22 |
| May 2009 | $ 55,400.65 | $27.32 | 5/1/09 | 897 | $24,506.04 |
| June 2009 | $ 33,240.39 | $16.39 | 6/1/09 | 866 | $14,193.74 |
| July 2009 | $ 60,745.80 | $29.96 | 7/1/09 | 836 | $25,046.54 |
| Aug. 2009 | $ 48,596.64 | $23.97 | 8/1/09 | 805 | $19,295.85 |
| **TOTAL** | $256,789.81 | | | | **$109,959.43** |

C.   Interest on Late Paid Contributions

As for late-paid contributions submitted for October 5 and November 9, 2008 and January 4, 2009, I recommend awarding interest in the amount of $473.54 as follows:

| Pay Period | Late Payments | Per Diem | Delinquency Period | Days | Interest |
|---|---|---|---|---|---|
| Oct. 5, 2008 | $4,862.45 | $2.40 | 10/1/08-1/9/09 | 100 | $ 240.00 |
| Nov. 9, 2008 | $ 535.15 | $0.26 | 11/1/08-1/9/09 | 69 | $ 17.94 |
| Jan. 4, 2009 | $1,114.20 | $0.55 | 1/1/09-1/28/10 | 392 | $ 215.60 |
| **Total** | | | | | **$ 473.54** |

---

[1] This is the principal amount that remained after applying available credits on January 28, 2010.  Plaintiffs' counsel states in his affidavit that the amount was $516.67, a minor typographical error.

D.  Liquidated Damages

Section 502(g)(2)(C) of ERISA also provides for additional interest or liquidated damages on unpaid contributions in "an amount equal to the greater of -- (I) interest on the unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A)."  29 U.S.C. § 1132(g)(2)(C).  The award of additional interest or liquidated damages is mandatory when a fiduciary prevails on a claim for unpaid contributions under ERISA.  Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan, No. 05 Civ. 6819, 2006 WL 1292780, at *4 (S.D.N.Y. May 11, 2006); see also Idaho Plumbers & Pipefitters v. United Mech., 875 F.2d 212, 215 (9th Cir. 1989).  Thus, the Funds are entitled pursuant to ERISA to liquidated damages for contributions that remain unpaid or that were not paid until after this suit was filed.

However, the Funds also seek liquidated damages for the late-paid contributions that were paid prior to the suit being filed.  As discussed above, plaintiffs are not entitled to statutory remedies under 29 U.S.C. § 1132(g)(2) for contributions paid prior to suit.  Therefore, any liability for liquidated damages for these late-paid contributions must stem from one of the labor agreements.  Article IX, section 3 of the Trust Agreement provides for "[a]dditional damages equal to the greater of: (1) [t]he amount of interest charged on the unpaid contributions, or (2) [l]iquidated damages in the form

of 20 percent of the unpaid contributions" where an employer is in default for five working days.

I recommend denying such additional damages on this record. Many courts which have considered an award of liquidated damages under labor contracts have recognized the concomitant need to "examine whether the liquidated damages provision in the operative collective bargaining agreements constitute a penalty under the federal common law." In re Michigan Carpenters, 933 F.2d at 390 (citing Idaho Plumbers, 875 F.2d at 217-18); see also United Order of Am. Bricklayers and Stone Masons Union No. 21 v. Thorlief Larsen & Son, Inc., 519 F.2d 331, 337 (7th Cir. 1975);[2] Alliance Elec., Inc. v. Local Union No. 98, Int'l Broth. of Elec. Workers, NO. CIV. A. 91-6892, 1992 WL 358072, at *9 (E.D. Pa. Oct 20, 1992); Zacher, 771 F. Supp. at 1334-35. In order to be enforceable, a liquidated damages provision in a labor agreement must satisfy two conditions: (1) "the harm caused by the breach must be very difficult or impossible to estimate" and (2) "the amount fixed must be a reasonable forecast of

---

[2] While not expressly overruling Thorlief, the Seventh Circuit in Gustafson Constr., 258 F.3d at 655 (Posner, J.), clearly rejected the notion that courts should examine whether liquidated damages are punitive. As the Court explained, "while the ban on contractual penalties remains an established principle of the law of contracts, it is antiquated and should not be extended into ERISA-land [since i]t is easy to assign nonexploitive reasons for contractual penalties and hard to give convincing reasons why in the absence of fraud or unconscionability consenting adults . . . should be prohibited from agreeing to such provisions." Id.; see also T&M Specialties, 2007 WL 2874819, at *5 (awarding liquidated damages without discussion); Fanning v. S.M. Lorusso & Sons, Inc., No. 02-CV-11859, 2004 WL 187330, at *4 n. 2 (D. Mass. Jan. 26, 2004).

just compensation for the harm caused." Bricklayers Pension Trust Fund v. Rosati, Inc., 23 Fed. Appx. 360 (6th Cir. 2001); Michigan Carpenters, 933 F.2d at 390; Idaho Plumbers, 875 F.2d at 216; see also Zacher, 771 F. Supp. at 1334-35 (enforceability of liquidated damages provision to late-paid contributions requires "scrutiny of the facts and circumstances of each case").

Here, there has been no evidence submitted as to whether the harm caused is difficult to estimate nor whether there is a rational relationship between the damages and the harm suffered. There may be instances where inquiry into the propriety of liquidated damages may not be necessary if the amounts involved are de minimis or the formula for damages bear some proportionality to the delay in payment. However, two of the three late payments were less than one and a half months late and the defendants are already being charged 18% interest, a substantially higher than market rate. See Alliance Elec., 1992 WL 358072, at *8-*10 ("requiring the parties to develop a record in order to allow the Court to consider whether the combined effect of the liquidated damages provision and the interest provision is to penalize plaintiffs for delinquent contributions"). Thus, I recommend denying liquidated damages for contributions that were paid prior to the suit being filed without prejudice to a future showing that the contract provision meets the two requirements discussed above. See Zacher, 771 F. Supp. at 1334-35 (denying summary judgment as to applicability of liquidated damages provision).

I recommend awarding liquidated damages in the amount of 20

percent of the unpaid contributions in the amount of $51,357.92.

E.   <u>Late Fees</u>

The plaintiffs further seek recovery of late fees in the amount of $2,475.  Pursuant to an amendment to the Trust Agreement, adopted by the Trustees on February 1, 2006, an administrative fee of $75.00 is charged to an employer for any check that bounced on or after March 1, 2006.  See Schreiber Aff., Exh. E.  Plaintiffs have demonstrated that Torretta bounced 33 checks.  Thus, I recommend awarding plaintiffs $2,475 in administrative fees.

F.   <u>Attorneys' Fees and Costs</u>

The Funds are also entitled to reasonable attorneys' fees and costs.  29 U.S.C. § 1132(g)(2)(D).  The award of attorneys' fees is mandatory.  <u>See</u> <u>Labarbera v. Clestra Hauserman, Inc.</u>, 369 F.3d 224, 226 (2d Cir. 2004).

The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 188-90 (2d Cir. 2008); <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1058-59 (2d Cir. 1989).  In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.  <u>See</u> <u>Lunday v. City of Albany</u>, 42 F.3d 131, 133 (2d

Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985).

If any expenditure of time was unreasonable, the court should exclude

these hours from the calculation. See Hensley, 461 U.S. at 434;

Lunday, 42 F.3d at 133. The court should thus exclude "excessive,

redundant or otherwise unnecessary hours, as well as hours dedicated

to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166

F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears

the burden of supporting its claim of hours expended by accurate,

detailed and contemporaneous time records. N.Y. State Ass'n for

Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir.

1983).

A reasonable hourly rate is "the rate a paying client would be

willing to pay," "bear[ing] in mind that a reasonable paying client

wishes to spend the minimum necessary to litigate the case

effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates

are determined by examining the "rates prevailing in the community

for similar services of lawyers of reasonably comparable skill,

experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34

F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886,

894 (1984)). Determination of the prevailing market rates may be

based on evidence presented or a judge's own knowledge of hourly

rates charged in the community. Chambless, 885 F.2d at 1059. The

"community" is generally considered the district where the district

court sits. See Arbor Hill, 522 F.3d at 190-91. Although plaintiffs

selected out-of-district counsel here, I recommend awarding

attorneys' fees based on the prevailing hourly rates in this district.  See Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 174-77 (2d Cir. 2009).

Plaintiffs seek to recover fees of $5,731.50.  Plaintiffs' counsel's affidavits set forth hourly billing rates and he has provided contemporaneous time records which describe the nature of the work done, the hours expended and the date on which the work was done.

Plaintiffs' request for fees is based on rates of $300.00 per hour for counsel Avram H. Schreiber, $225.00 per hour and $80.00 per hour for counsel Kimberly Oberhauser, an associate admitted in 2008, $225 per hour and $80 per hour for counsel Linc Leder, an associate admitted in 2009, and $80.00 per hour for paralegal Denise Dees.  Schreiber Aff. at ¶ 47.  Although Mr. Schreiber's hourly rate is at the higher end of the applicable range, I find his regular billing rate of $300 per hour to be reasonable based on my knowledge of prevailing rates for such matters in New York.  See LaBarbera v. D&R Materials, Inc., No. 06-CV-2100, 2007 WL 1041666, at *4 (E.D.N.Y. Apr. 3, 2007) (approving rate of $340 per hour for attorney); LaBarbera v. ESL Home Remodeling Inc., No. 06-CV-1372, 2007 WL 708359, at *6 (E.D.N.Y. Feb. 28, 2007) (awarding $275 per hour for Mr. Schreiber); Mingoia v. Crescent Wall Sys., No. 03 Civ. 7143, 2004 U.S. Dist. LEXIS 16761, at *16 (S.D.N.Y. Aug. 23, 2004) (awarding $325 per hour for attorney with at least ten years of ERISA litigation experience).  However, I find the rate of $225 per hour

charged for Ms. Oberhauser's and Mr. Leder's time to be too high for relatively junior attorneys.  Accordingly, I respectfully recommend that Ms. Oberhauser's and Mr. Leder's  regular rates be reduced to $175 per hour.  See <u>ESL Home Remodeling</u>, 2007 WL 708359, at *6 (reducing junior associate's rate to $150 per hour); <u>King v. STL Consulting, LLC</u>, No. 05 CV 2719, 2006 WL 3335115, at *7-*8 (E.D.N.Y. Oct. 3, 2006) (awarding $100 per hour for associate admitted in 2005); <u>LaBarbera v. J.E.T. Res., Inc.</u>, 396 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2005) (awarding associate $150 per hour).  I further recommend that the paralegal's billing rate of $80 per hour be approved.  See <u>ESL Home Remodeling</u>, 2007 WL 708359, at *6 (awarding $70 per hour for paralegal); <u>Finkel v. Tech Man</u>, No. 06-CV-2264, 2007 WL 433399, at *4 (E.D.N.Y. Feb. 6, 2007) (awarding $75 per hour for paralegal).

Having reviewed the billing records submitted, I find that the time spent on this case of 22.8 hours at attorney rates[3] and 6.3 hours at paralegal rates to be reasonable in light of the work completed.  See <u>Marton v. HST Roofing, Inc.</u>, No. 03-CV-4165, 2007 WL 595054, at *3 (E.D.N.Y. Feb. 22, 2007) (awarding fees for 20 hours of attorney time and five hours for paralegal time in ERISA default judgment case); <u>LaBarbera v. David Liepper & Sons, Inc.</u>, No. CV-06-137, 2006 WL 2423420, at *5 (E.D.N.Y. July 6, 2006) (finding 17.7 hours reasonable in ERISA default judgment case); <u>Del Turco v. Carrara Contractors, Inc.</u>, No. 03 CV 5538, 2006 WL 1783632, at *3-*4

---

[3] Administrative and clerical tasks were billed at a rate of $80.00 per hour by the attorneys.

(E.D.N.Y. June 23, 2006) (awarding fees for 25.05 hours for attorneys and 2.6 hours for legal assistants in ERISA default judgment case). Thus, I recommend that the Funds be awarded $4,656.50 in attorney's fees against Torretta.

The Funds also seek $529.68 in costs, including the court filing fee, service of process fees and the costs of photocopying and postage. <u>See</u> Schreiber Aff., Exh. R. Reasonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable. <u>See</u> <u>LeBlanc-Sternberg v. Fletcher</u>, 143 F.3d 748, 763 (2d Cir. 1998); <u>United States Football League v. National Football League</u>, 887 F.2d 408 (2d Cir. 1989). On the other hand, ordinary overhead expenses are not recoverable. <u>See</u> <u>LeBlanc-Sternberg</u>, 143 F.3d at 763. Here, plaintiffs' request for costs includes only recoverable litigation costs. <u>See</u> <u>Aston v. Secretary of Health & Human Servs.</u>, 808 F.2d 9, 12 (2d Cir. 1986) (photocopying and postage are reimbursable costs). Accordingly, I recommend that plaintiffs be awarded $529.68 in costs.

G.  <u>Injunctive Relief</u>

Finally, plaintiffs seek a permanent injunction directing defendants to comply with the terms of the CBA and Trust Agreement and pay contributions when due. Compl. at ¶ 27; Schreiber Aff. at ¶¶ 44-45. The Court "may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." <u>STL</u>

Consulting, 2006 WL 3335115, at *8; David Liepper, 2006 WL 2423420, at *5; see ESL Home Remodeling, 2007 WL 708359, at *6.

As to the first requirement, injunctive relief is available under section 1132(g)(2)(E).  See Annuity, Pension, Welfare and Training Funds of Int'l Union of Operating Eng'rs v. A.J.S. Trucking & Excavating Corp., 06-CV-0701, 2007 WL 539152, at *3 (E.D.N.Y. Feb. 16, 2007); Lanzafame v. L&M Larjo Co. Inc., No. 03-3640, 2006 WL 2795348, at *9 (E.D.N.Y. Sept. 26, 2006).  Since defendants' defaults establish their liability, plaintiffs have demonstrated the first requirement for an injunction, actual success on the merits.  However, plaintiffs must also show irreparable harm and the absence of an adequate remedy at law.  See Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68 (2d Cir. 1999).  Here, plaintiffs' request for a permanent injunction fails because they have not shown that monetary damages are inadequate to remedy future violations.  See LaBarbera v. Rockwala Inc., No. 06-CV-6641, 2007 WL 3353869, at *6 (E.D.N.Y. Nov. 8, 2007); ESL Home, 2007 WL 708359, at *7; L&M Larjo, 2006 WL 2795348, at *9; David Liepper, 2006 WL 2423420, at *6; STL Consulting, 2006 WL 3335115, at *9.  Even absent an audit, employing the Trust Agreement's provisions and the additional ERISA remedies affords the Funds adequate compensation for any unpaid contributions. Therefore, I respectfully recommend denying plaintiffs' request for injunctive relief.

<u>CONCLUSION</u>

For the foregoing reasons, I recommend that the Court award the Funds judgment against defendant Giuseppe Scalici in the amount of $3,405.68. I further recommend that the Court award judgment against defendant Torretta Trucking Inc. in the amount of $426,241.88 based on the following total damages: (a) $256,789.81 in unpaid contributions; (b) $110,432.97 for pre-judgment interest through October 15, 2011 and at a rate of $126.64 per day thereafter until the entry of judgment; (c) liquidated damages of $51,357.92; (d) $2,475 in administrative fees; (e) $4,656.50 in attorneys' fees; and (f) $529.68 in court costs. I further recommend that plaintiffs' request for a permanent injunction be denied.

This report and recommendation will be filed electronically and a copy sent by mail to the defendants on this date. Any objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Allyne R. Ross and the undersigned, by March 29, 2012. Failure to file objections within the specified time waives the right to appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:      Brooklyn, New York
            March 12, 2012

                              /s/
                              ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                              MARILYN D. GO
                              UNITED STATES MAGISTRATE JUDGE